IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MATTHEW M. PHLIPOT, :
 :
        Petitioner, :
 :
v. : Civil Action No. 14-383-RGA
 :
G.R. JOHNSON, Warden, and :
ATTORNEY GENERAL OF THE :
STATE OF DELAWARE, :
 :
        Respondents. :

## MEMORANDUM OPINION

Matthew M. Phlipot. *Pro se* Petitioner.

Karen V. Sullivan, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

April 27, 2015
Wilmington, Delaware

/s/ Richard G. Andrews
ANDREWS, UNITED STATES DISTRICT JUDGE:

Petitioner Matthew M. Phlipot ("Petitioner") filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and an Amendment to that Application (hereinafter collectively referred to as "Petition"). (D.I. 1; D.I. 10) The State filed an Answer in opposition, and Petitioner filed a Reply. (D.I. 15; D.I. 18) For the reasons discussed, the Court will deny the Petition as barred by the limitations period prescribed in 28 U.S.C. § 2244.

I. BACKGROUND

On February 29, 2009, Petitioner entered a guilty plea to endangering the welfare of a child. (D.I. 15 at 4) This charge stemmed from Petitioner's interactions with a seventeen year old female ("KK") when he was thirty-two. *Id.* at 2. Petitioner was sentenced to probation, and ordered to have no contact with KK in any manner, either directly or through a third party. *Id.* at 4. Despite the no-contact order, Petitioner sent KK numerous emails. He created a special Yahoo! account through which he would create a message for KK to read that would not indicate an obvious "sent" or "received" message. A subpoena to Yahoo! allowed access to that information, and KK saved, printed, and gave copies of some of the emails to the Delaware State Police. *Id.*

Thereafter, Petitioner was indicted in May 2009 on four counts of fourth degree rape. (D.I. 15 at 1) In October 2009, the grand jury returned a superseding indictment charging Petitioner with the original four counts of rape and an additional twenty-seven counts of criminal contempt, six counts of witness tampering, and one count of falsely reporting an incident. *Id.* Following a jury trial in the Delaware Superior Court, Petitioner was convicted of two counts of fourth degree rape, twenty-seven counts of criminal contempt, and six counts of witness

1

tampering. *See Phlipot v. State*, 19 A.3d 302 (Table), 2011 WL 1716366, at *2 (Del. May 3, 2011). The jury acquitted Petitioner on the two other charges of fourth degree rape, and the Superior Court dismissed the charge for falsely reporting an incident charges on a motion for judgment of acquittal. *See State v. Phlipot*, 64 A.3d 856, 857 (Del. Super. Ct. 2012); (D.I. 15 at 1) On August 12, 2010, the Superior Court sentenced Petitioner to five years at Level V incarceration on each of the rape charges (for a total of ten years at Level V incarceration), followed by six months at Level IV home confinement and two years of probation; an aggregate of eight years at Level V incarceration on the witness tampering charges, suspended for probation; and a $100 fine on each of the twenty-seven counts of criminal contempt.[2] *See Phlipot*, 2011 WL 1716366, at *2. The Delaware Supreme Court affirmed Petitioner's convictions and sentences on May 3, 2011. *Id.*

On March 2, 2012, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). *See Phlipot*, 64 A.3d at 858. The Superior Court denied the Rule 61 motion on December 18, 2012, and the Delaware Supreme Court affirmed that decision on April 25, 2013. *See id.* at 867; *Phlipot v. State*, 65 A.3d 167 (Table), 2013 WL 1798946 (Del. Apr. 25, 2013).

---

[2]For one fourth degree rape conviction, Petitioner was sentenced to five years at Level V. For the other fourth degree rape conviction, Petitioner was sentenced to fifteen years at Level V, suspended after five years at Level V, and upon successful completion at Level V, to ten years at Level IV home confinement or work release, suspended after six months at Level IV home confinement or work release for two years at Level III, with probation to be concurrent to any Petitioner is presently serving. (D.I. 17, Appellant's Op. Br. in *Phlipot v. State*, No. 573, 2010, at Exh. A)

2

Petitioner filed a motion for modification of sentence on September 2, 2014, which the Superior Court denied on September 16, 2014. (D.I. 17, Del. Super. Ct. Crim. Dkt. Entry Nos. 151, 152)

The instant Petition is dated March 17, 2014, and asserts the following grounds for relief: (1) the Superior Court improperly instructed the jury that mistake of age was not a defense for the rape offenses, and defense counsel provided ineffective assistance by not objecting to the Superior Court's improper instruction and also by failing to advance a mistake of age defense; (2) defense counsel provided ineffective assistance by failing to present a meritorious defense and by seeking to exclude the evidence that Petitioner engaged in sexual intercourse with KK in Maryland; and (3) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by withholding exculpatory evidence.[3] The State contends that the Court should deny the Petition as time-barred. (D.I. 15 at 5-16) Alternatively, the State contends that Petitioner's ineffective assistance of counsel claims should be denied for failing to satisfy § 2254(d), and his remaining claims should be denied as procedurally defaulted. (D.I. 15 at 16-27) Petitioner filed a Reply asserting that his untimely filing should be excused because he is actually innocent. (D.I. 18)

## II. ONE YEAR STATUTE OF LIMITATIONS

AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[3] Although Petitioner does not specifically cite to *Brady v. Maryland*, the language he uses and the Delaware court case to which he cites (*O'Neil v. State*, 691 A.2d 50 (Del. 1997)) indicate that he is raising this claim pursuant to *Brady*.

3

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010)(equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

Here, Petitioner does not allege, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). As such, the one-year period of limitations began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final ninety days after the state appellate court's decision. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). In this case, the Delaware Supreme Court affirmed Petitioner's convictions and sentence on May 3, 2011, and he did not file a petition for a writ of certiorari in the United States Supreme Court. As a result, Petitioner's conviction became final for the purposes of § 2244(d)(1) on August 2, 2011, and the limitations period began to run on August 3, 2011. Adding one year to that date, Petitioner had until August 2,

2012 to timely file a habeas petition.[4] *See Wilson v. Beard*, 426 F.3d 653, 662-64 (3d Cir. 2005). Petitioner did not file his Petition until March 17, 2014,[5] more than one and one-half years after the expiration of AEDPA's statute of limitations. Therefore, the Petition is time-barred, unless the limitations period can be statutorily or equitably tolled. The Court will discuss each doctrine in turn.

## A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). However, the limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

---

[4]The Court notes that 2012 was a leap year with 366 days. However, "[e]very federal circuit that has addressed the issue has concluded that [the] method in [in Fed. R. Civ. P. 6], i.e., the 'anniversary' method, for calculating a time period applies to [] AEDPA's one-year limitation period." *Nunez v. California*, 2014 WL 809206, at *3 n.9 (N.D. Ohio Feb. 25, 2014)(collecting cases). "Under the 'anniversary' method, the first day of the one-year limitations period is the day after the triggering event, thus giving petitioners 'until the close of business on the anniversary date of . . .' the triggering event to file a federal habeas petition." *Id.* (citation omitted). Using the anniversary method in this case (and, essentially, ignoring the leap day), results in August 2, 2012 as the last day of AEDPA's limitations period.

[5]Pursuant to the prisoner mailbox rule, the Court adopts as the filing date March 17, 2014, the date on the Petition, rather than March 26, 2014, the date of docketing. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003)(the date on which a prisoner transmitted documents to prison authorities for mailing is to be considered the actual filing date).

5

Here, when Petitioner properly filed his Rule 61 motion on March 2, 2012, 212 days of AEDPA's limitations period had already expired. The Rule 61 motion tolled the limitations period from March 2, 2012 through April 25, 2013, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of the Rule 61 motion. The limitations clock started to run again on April 26, 2013, and ran the remaining 153 days of the limitations period without interruption until the limitations period expired on September 26, 2013.[6] Thus, Petitioner filed the instant Petition more than five months too late. Accordingly, the Petition must be dismissed as time-barred, unless equitable tolling is available.

## B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50. With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.* As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahoney*, 654 F.3d 385, 400 (3d Cir. 2011). Notably, an extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d. Cir. 2013).

---

[6]The motion for modification of sentence that Petitioner filed on September 2, 2014 has no statutory tolling effect because it was filed long after the expiration of AEDPA's limitations period.

6

Petitioner concedes that he filed his Petition too late, but asserts that he was "under the assumption that the one-year time frame took place after all state remedies were exhausted." (D.I. 18 at 1) Petitioner's ignorance of the law and/or mistake does not warrant equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004). Accordingly, the doctrine of equitable tolling does not apply to this case.

## C. Actual Innocence

Petitioner also attempts to avoid AEDPA's time-bar by asserting he has new evidence demonstrating his "actual innocence." (D.I. 18 at 2-3) In *McQuiggin v. Perkins*, __ U.S. __, 133 S.Ct. 1924, 1928 (2013), the Supreme Court held that a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. However, the *McQuiggin* Court cautioned that "tenable actual-innocence gateway pleas are rare," and a petitioner only meets the threshold requirement by "persuad[ing] the district court that, **in light of the new evidence**, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 1928 (emphasis added). An actual innocence claim must be based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [] that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). In the Third Circuit, evidence is "new" for the purposes of the *Schlup* standard only if it was not available at the time of trial and could not have been discovered earlier through the exercise of due diligence,[7] except in situations where that evidence was not discovered due to the ineffective assistance of trial counsel. *See Houck v.*

---

[7]The circuits addressing the issue are split over what constitutes "new" evidence for *Schlup* purposes. The Eighth Circuit's interpretation of "new" evidence corresponds with the Third Circuit's, whereas the Seventh and the Ninth Circuits do not require the exercise of due diligence, and view "new" evidence as evidence that was not "presented" at trial. *See Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011)(collecting cases).

*Stickman*, 625 F.3d 88, 93-94 (3d Cir. 2010). In turn, when determining if a petitioner's new evidence shows it is "more likely than not that no reasonable juror would have convicted him," a court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538 (2006). Finally, a court "may consider how the timing of the submission [of actual innocence] and the likely credibility of the affiant[] bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 332; *see also McQuiggin*, 133 S.Ct. at 1935. For the following reasons, the Court concludes that Petitioner's "actual innocence" argument does not overcome his failure to comply with the one-year statute of limitations.

During the trial, KK testified that she spent the night at Petitioner's house for a two-night stretch, either Wednesday and Thursday (January 21 and 22, 2009), or Thursday and Friday (January 22 and 23, 2009). KK was not sure of the dates because "all the dates kind of ran together" during the one-week period she stayed at her friend Ben Herholdt's house after running away from home. (D.I. 17, Vol. A of Transcript in *State v. Phlipot*, ID No. 0903021873, at A-17) KK testified that, during the week of January 19, 2009, Petitioner would pick her up from Ben Herholdt's house in the evening and take her to his (Petitioner's) house, and then she would leave in the morning before Petitioner's wife came home from work. *Id.* at 19. According to KK, she and Petitioner had oral intercourse and vaginal intercourse two or three times while she stayed at his house. *Id.* at 18-20. KK testified that the intercourse occurred on the first night of KK's two-night stretch at Petitioner's house. (D.I. 17, Vol. B of Transcript in *State v. Phlipot*, ID No. 0903021873, at B-55)

8

On cross-examination, after questioning KK about the different stories she had provided to the police during three different taped interviews, defense counsel focused on KK's third taped police interview. (D.I. 17, Vol. B of Transcript in *State v. Phlipot*, ID No. 0903021873, at B-12) Defense counsel asked if KK remembered the portion of the interview where the police detective asked if she had sex with Petitioner on Wednesday night, and clarified that it "would have been the night of Wednesday the 21st of January." *Id.* KK responded, "I'm not sure of the date. All I know is Wednesday." *Id.* Defense counsel then stated, "Okay. So if we look at a calendar of the month of January, it was Wednesday, January 21st; correct?" *Id.* KK said, "Yes." *Id.* After further questioning, defense counsel recapped by saying, "but can we agree that the sexual intercourse that you allege took place with [Petitioner] took place sometime on the night of the 21st or the 22nd." *Id.* at B-13. KK responded, "If that's the time I stayed at his house. I don't remember. It was a two-day stretch, either Wednesday/Thursday or Thursday/Friday." *Id.* Defense counsel pressed on, stating, "Okay. So can we agree Wednesday night, Thursday morning is when you claim the sex occurred, [] [a]nd then Thursday going into Friday we can agree that there was only touching?" *Id.* at B-14. KK responded, "Yes." *Id.*

On re-direct, the State asked KK if she remembered whether she had sex with Petitioner on "the 21st, 22nd, or the 23rd of that week." (D.I. 17, Vol. B of Transcript in *State v. Phlipot*, ID No. 0903021873, at B-56) KK responded, "If it was the Wednesday/Thursday, if that was the stretch that I stayed with him, it was the 21st [of January]. If it was the Thursday/Friday, it would have been the 22nd [of January] because that would have been the first night that I stayed with him." *Id.* at B-56.

9

Now, in this proceeding, Petitioner contends that an "Affidavit" provided by his wife, Amy Phlipot, constitutes new evidence of his actual innocence, because it proves that he was not at his home in Lewes on the "actual date" of the rape, Wednesday, January 21, 2009. (D.I. 10 at 4) The "Affidavit" is dated December 9, 2014, and asserts that Ms. Phlipot was at the Phlipot home all night on Wednesday, January 21, 2009, and that Petitioner was not there. (D.I. 10 at 4) Petitioner explains that Ms. Phlipot did not provide this information at an earlier time because the "actual date" of the alleged rape, Wednesday, January 21, 2009, was only revealed to him and/or defense counsel during the trial,[8] and Ms. Phlipot only realized she was home on Wednesday night, January 21, 2009 after she obtained and read Petitioner's criminal trial transcript during his Rule 61 proceeding. (D.I. 10 at 1-2) According to Petitioner, if the "Affidavit" is viewed in conjunction with Ms. Phlipot's trial testimony that Petitioner worked on Friday night, January 23, 2009, it "leaves no time frame to support KK's [] statements." (D.I. 18 at 2)

While creative, this argument does not satisfy the stringent actual innocence standard articulated in *McQuiggin*. First, Ms. Phlipot's declaration that Petitioner was not at their home in Lewes on Wednesday night, January 21, 2009 does not constitute "new" evidence for the purposes of the *Schlup* standard, because this information was available to Petitioner through the exercise of reasonable diligence at the time of his trial. For instance, in the "Affidavit" itself, Ms. Phlipot states that she informed the prosecutor the week before the trial that she "was sent home early to be on-call the Wednesday night going into Thursday morning[,] [] and that Petitioner "was not home when [she] got there." (D.I. 10 at 4) In turn, Petitioner asserts that Ms.

---

[8]The superseding indictment alleged that Petitioner intentionally engaged in sexual intercourse with KK "on or about and between the 19th day of January, 2009 and the 26th day of January, 2009." (D.I. 17, App. to Appellant's Op. Br. in *Phlipot v. State*, No.573,2010, at A12-A13)

10

Phlipot "can be certain" of the dates she was at their home in Lewes "due to a work calendar that [she] keeps." (D.I. 10 at 1) Since this "work calendar" allegedly covers the days Ms. Phlipot worked in 2009, and since the calendar is still in existence and is currently in Ms. Phlipot's possession, it would appear that the work calendar was available during Petitioner's trial. And finally, Ms. Phlipot's declaration that Petitioner was not at their Lewes home on Wednesday, January 21, 2009, is not "new" in the sense that it overlaps with the trial testimony offered by Petitioner's friend that he and Petitioner were in Staten Island, New York, for the entire night on Wednesday, January 21, 2009, and did not return to Delaware until sometime around 9:30 p.m. on Thursday night, January 22, 2009. (D.I. 17, *State v. Phlipot*, ID No. 0903021873, Transcript Vol. A at A-70 to A-71)

Second, the Court questions the reliability of the "Affidavit." For starters, as the State notes in its answer, although purportedly signed by Ms. Phlipot, the identity of the person who signed the "Affidavit" cannot be confirmed because the "Affidavit" is not notarized. (D.I. 15 at 28 n.56) In turn, the timing of the "Affidavit," along with the conflicting reasons for Ms. Phlipot's delay in presenting it, only raise questions about the credibility of the assertions contained therein. *See McQuiggin*, 133 S.Ct. at 1936; *Schlup*, 513 U.S. at 332. Ms. Phlipot did not sign the "Affidavit" until December 9, 2014, three and a half years after the denial of Petitioner's direct appeal and about nine months after Petitioner filed this §2254 Petition. In her "Affidavit," Ms. Phlipot explains that she did not inform Petitioner (and presumably, defense counsel) that she knew Petitioner was not at home on Wednesday night, January 21, 2009,

11

because she feared unspecified "retaliation" from the prosecutor.[9] (D.I. 10 at 4) In contrast, Petitioner asserts that Ms. Phlipot did not provide this information at an earlier time because she only "realized" that she was at home without Petitioner on Wednesday, January 21, 2009, when she obtained the trial transcript during Petitioner's Rule 61 proceeding. (D.I. 10 at 1) These different explanations for Ms. Phlipot's delay are significantly inconsistent and only increase the Court's skepticism about the reliability of Ms. Phlipot's "Affidavit."

Third, even if the Court were to view the "Affidavit" as constituting new reliable evidence, Petitioner has not shown that it is more likely than not that no reasonable juror would have found him guilty of fourth degree rape beyond a reasonable doubt even if Ms. Phlipot had testified that Petitioner was not at their Lewes home on Wednesday night. Contrary to Petitioner's assertion, no specific "actual date" for the rape was revealed during the trial. Rather, KK consistently testified that she was raped on the first night of whichever two-night stretch she actually spent at Petitioner's house. In other words, KK was either raped on the night of Wednesday, January 21, 2009 (Wednesday/Thursday stretch), or on the night of Thursday, January 22, 2009 (Thursday/Friday stretch). Notably, even though the jury was presented with a possible alibi for Petitioner for Wednesday night via his friend's testimony about their overnight trip to Staten Island, the jury still convicted Petitioner of two counts of fourth degree rape. Since the "Affidavit" only addresses Petitioner's whereabouts on Wednesday night, it does not rebut or disprove KK's testimony that the rape may have occurred on Thursday, January 22, 2009. Consequently, the Court is not persuaded that Ms. Phlipot's evidence is nearly as significant as

---

[9]The Court has found nothing in the record to support this contention. Ms. Phlipot testified as a defense witness at the trial, and her testimony does not appear to reflect any hesitation to support her husband. In fact, she provided him an alibi for Friday night/Saturday morning.

12

Petitioner makes it out to be. Ms. Phlipot's testimony that Petitioner was not at his home in Lewes on Wednesday night, January 21, 2009 would be cumulative. Since the jury did not form a reasonable doubt based on the testimony provided by Petitioner's friend regarding their trip to New York on Wednesday night, it follows that the Court cannot conclude that the testimony of Petitioner's wife – hardly a disinterested witness – would have meant that not reasonable juror would have found Petitioner guilty.

The State had a strong case. Petitioner argues in his Petition that the evidence that he had sex with KK is essentially irrefutable. His position is, however, that the only place he had sex with her was in Baltimore, Maryland, where it was not a crime to do so. Petitioner does not assert that he had been studying law to learn in which states he could legally have had sex with KK. Petitioner also offers no plausible reason why KK would fabricate the location of the sex. No matter how one looks at this case, Petitioner did not have many good choices as to how to defend against the charges. Petitioner does not now thread the needle in such a way that the Court can conclude that his new evidence leads to the conclusion that no reasonable jury would have found him guilty.

For all of these reasons, the Court concludes that Ms. Phlipot's declaration in her "Affidavit" that Petitioner was not home on Wednesday, January 21, 2009 cannot be said to constitute "evidence of innocence so strong that court cannot have confidence in the outcome of the trial." *McQuiggin*, 133 S.Ct. at 1936. As such, Petitioner's "actual innocence" argument does not overcome his failure to comply with AEDPA's one-year limitations period.

Accordingly, the Court will dismiss the instant Petition as time-barred.[10]

---

[10]Given its determination that the Petition is time-barred, the Court will not address the State's alternate arguments that the ineffective assistance of counsel claims should be denied for failing

13

## III. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition is time-barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## IV. CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied as time-barred. An appropriate Order will be entered.

---

to satisfy the § 2254(d) standard and that the remaining claims should be denied as procedurally barred.

14